## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK JACKSON,

                    Plaintiff,

        v.

ROHM & HAAS COMPANY, et al.,

                    Defendants.

Civil Action No. 06-3682

## MEMORANDUM/ORDER

September 5, 2007

The dispute between Mark Jackson and the defendants—principally Rohm & Haas

Co. and Liberty Life Assurance Co. but also employees of the two companies[1]—has been

the subject of numerous lawsuits in both state and federal court.  The above-captioned

---

[1] In addition to Rohm & Haas and Liberty Life, plaintiff's complaint alleges causes of action against Raj L. Gupta, Chairman and CEO of Rohm & Haas; Robert A. Lonergan, Vice President and General Counsel of Rohm & Haas; Ellen Friedel, Assistant General Counsel of Rohm & Haas; Marilyn Orr, Human Resources Manager for Rohm & Haas; Lori Hamlin, Senior Disability Case Manager for Liberty Life; and twenty-five "John Doe" defendants, who "were officers, directors, executives, managers, committee members, administrators, attorneys, and other officials, representatives, and employees of R&H, Liberty Life, and/or others, and/or companies or individuals performing and/or providing various services to them, including but not limited to lawyers and/or law firms providing legal services."  Most of these defendants have been named in one or another of the complaints in plaintiff's previous lawsuits.  For ease of reference throughout this opinion, I will refer to Rohm & Haas and its employees as the "Rohm & Haas defendants" and Liberty Life and its employees as the "Liberty Life defendants" where it is necessary to make such a distinction.

action is the third suit Mr. Jackson has brought in this court.  In this suit, Jackson

contends that defendants' actions in terminating his employment at Rohm & Haas and

discontinuing his disability benefits violated the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. §

1985, 42 U.S.C. § 1986, and the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1001 *et seq.*  Jackson also alleges supplemental state law claims of fraud,

negligent misrepresentation, intentional infliction of emotional distress, and civil

conspiracy.  Defendants have filed two motions to dismiss, which are presently before the

court.  For the reasons explained herein, the motions will be granted in part and denied in

part.


**I. Facts**

        The details of the several *Jackson* cases are so involved as to defy concise

summary.  However, I will undertake to set out what appear to be the salient facts in order

to explain how the parties reached the present stage of litigation.  In doing so, I will draw

upon my March 9, 2006 opinion in *Jackson v. Rohm & Haas Co.*, No. 05-4988, 2006 WL

680933 (*Jackson II*):

> This litigation has a relatively lengthy history. It all began when plaintiff Mark
> Jackson went on a date with a co-worker, and she subsequently accused him of
> sexually assaulting her. This accusation led defendant Rohm & Haas, Jackson's
> employer, to question Jackson about the date and to conduct an investigation into
> the allegation. Rohm & Haas was ultimately unable to substantiate the allegation,
> and it took no action against Jackson. Nevertheless, Jackson found his

2

interrogation by Rohm & Haas personnel so abrasive that he sued Rohm & Haas in a Pennsylvania state court for invasion of privacy and intentional infliction of emotional distress. During discovery in the state-court case, a dispute arose as to the authenticity of a document containing some notes taken by a Rohm & Haas employee during investigation of the assault allegation. Jackson accused Rohm & Haas and its lawyers of falsifying evidence. The state court eventually disposed of the lawsuit in favor of Rohm & Haas on the ground that, whether or not Jackson's common law tort claims against Rohm & Haas had factual merit, those claims were preempted by the state workers' compensation statute. *See Jackson v. Rohm & Haas Co.*, 56 Pa. D. & C.4th 449 (Phila. Co. 2002). This ruling was sustained on appeal. *See Jackson v. McCrory*, 833 A.2d 1155 (Pa. Super. Ct. 2003); *Jackson v. McCrory*, 849 A.2d 1205 (Pa. 2004).

Jackson then brought a federal action against Rohm & Haas, several of its employees, and the lawyers who represented it in state court, realleging falsification of evidence during the state court proceedings and contending that this amounted to, *inter alia*, a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. That suit will be referred to as *Jackson I*. This court dismissed the complaint in *Jackson I* by order dated June 30, 2005. *See Jackson v. Rohm & Haas Co.*, 2005 WL 1592910 (E.D. Pa. June 30, 2005). I concluded that Jackson lacked standing to bring a RICO claim because his injury (loss of the state-court case) was not proximately caused by defendants' alleged fraud – that is, since the state-court ruling was based on statutory preemption rather than a finding on the merits of Jackson's privacy and infliction-of-emotional-distress claims, Jackson would have lost whether or not defendants had falsified evidence that went to the merits of the tort claims. *Id.* at 4–5. Because RICO was the only basis for federal jurisdiction, I dismissed the entire complaint, declining to exercise supplemental jurisdiction over the remaining state-law claims. *Id.* at 5. . . .

On September 19, 2005 . . . Jackson filed another lawsuit in this court—[*Jackson II*]—claiming that the *Jackson I* defendants (Rohm & Haas, Rohm & Haas employees, and their state-court lawyers), plus the lawyers who represented the *Jackson I* defendants, plus Rohm & Haas's disability insurance administrator, Liberty Life, engaged in improper conduct in connection with *Jackson I*.

Opinion and order of March 9, 2006, *Jackson II*, No. 05-4988, 2006 WL 680933, at *1

(E.D. Pa. March 9, 2006).

In response to the amended complaint in *Jackson II*, the defendants in that suit[2]
moved for Rule 11 sanctions, contending, *inter alia*, that the *Jackson II* complaint
contained frivolous and unwarranted allegations.  *Id.* at *2.  On March 9, 2006, I granted
defendants' Rule 11 motions.

Seeking to add claims arising from his termination and the cessation of his
disability benefits to his federal lawsuit, Jackson moved this court for leave to amend the
complaint in *Jackson II* on May 17, 2006.  Because I found that the proposed amendment
contained statements that I had previously sanctioned in my March 9, 2006 opinion, I
denied leave to file the proposed amended complaint without prejudice to filing a further
proposed amended complaint.  I stated that "[i]f Jackson wishes to renew his effort to file
an amended pleading that presents claims based on his alleged termination by Rohm &
Haas, he may try to do so, but he will not be permitted to append those claims to claims

---

[2] The defendants in the original complaint in *Jackson II* were as follows: Rohm &
Haas Company; Morgan Lewis & Bockius LLP and Conrad O'Brien Gellman & Rohn,
P.C. (law firms that represented Rohm & Haas in the state-court litigation); Harkins
Cunningham, LLP (the law firm that represented all defendants in *Jackson I*); Liberty
Life Assurance Company of Boston; Robert Vogel, Celia Joseph, Royce Warrick,
Michael McLaughlin, Wayne Davis, David Gartenberg, Ellen Friedel, and Jane Greenetz
(employees of Rohm & Haas); James D. Pagliaro, Paul J. Greco, P. Daffodil Tyminski,
and Aretha Delight Davis (attorneys at Morgan Lewis & Bockius); Nancy Gellman,
William J. O'Brien, and Kelly G. Huller (attorneys at Conrad O'Brien Gellman & Rohn,
P.C.); June McCrory (the person who accused Jackson of sexually assaulting her); John
G. Harkins, Eleanor Morris Illoway, Steven A. Reed, and Coleen Healy Simpson
(attorneys at Harkins Cunningham, LLP); and John Doe Nos. 1–25 ("attorneys,
administrators, officers, directors, executives, managers, committee members, and other
agents, officials, representatives, and employees" of the organizations listed as
defendants).

that have already been adjudicated frivolous."  Memorandum/Order of July 7, 2006,

*Jackson II*, No. 05-4988, 2006 WL 1892661, at *1 (E.D. Pa. July 7, 2006).

Rather than renewing his attempt to amend the *Jackson II* complaint to include

claims based on his termination, Jackson filed the present federal action, *Jackson III*,

which focuses on claims concerning his termination and the cessation of his disability

benefits.  The amended complaint alleges that, on February 16, 2006, Jackson's counsel

wrote a letter to counsel for Rohm & Haas and counsel for Liberty Life, advising that

plaintiff had been medically cleared to return to work after having been on disability

leave since 2000.  Am. Compl. ¶ 44.  On or about February 22, 2006, counsel for Rohm

& Haas informed plaintiff that counsel was not involved in determinations about

plaintiff's disability and employment status.[3]  On or about February 23, 2006, plaintiff

notified Rohm & Haas and Liberty Life directly that he had been medically released to

return to work.[4]  Am. Compl. ¶¶ 45–46.  Liberty Life then sought confirmation from

---

[3] The February 22, 2006 letter from Rohm & Haas's counsel to plaintiff set off a
flurry of communications between counsel for plaintiff and counsel for Rohm & Haas, in
which plaintiff ultimately accused Rohm & Haas's counsel of intentionally interfering
with plaintiff's return to work.  Am. Compl. ¶¶ 45, 47, 50–51.

[4] The amended complaint alleges that counsel for Rohm & Haas informed plaintiff
in the February 22, 2006 letter that he should direct correspondence concerning his
disability and employment to Liberty Life, presumably prompting plaintiff's letter on
February 23, 2006.  However, after receiving plaintiff's letter of February 23, 2006,
Liberty Life in turn informed plaintiff that Liberty Life was only involved in the
administration of plaintiff's disability benefits and was not involved in plaintiff's
"employment initiatives."  Am. Compl. ¶¶ 45, 48.  Plaintiff asserts that these and other
communications were "part of a scheme to interfere with and deny plaintiff employment
and benefits to which he was entitled, to interfere with and prevent plaintiff from the

5

plaintiff's doctor that he had been medically released.  Am. Compl. ¶ 49.

On March 10, 2006, a case manager at Liberty Life informed plaintiff that his disability benefits would be discontinued on that date, based on plaintiff's counsel's representations that plaintiff was medically cleared to return to work.  Am. Compl. ¶ 52. On April 7, 2006, Rohm & Haas sent a letter to plaintiff, which he received on or about April 10, 2006, informing him that, because the position he had held prior to going on disability in 2000 had been eliminated when Rohm & Haas sold its Agricultural Chemicals business in 2001, his employment was terminated as of March 10, 2006—the date as of which Liberty Life determined that Jackson was no longer eligible for disability benefits.  Am. Compl. ¶ 53.

*Jackson III* was filed on August 18, 2006.  The amended complaint was filed on October 12, 2006.  The amended complaint is the subject of defendants' Rule 12(b)(6) motions to dismiss, which, after substantial briefing, are now ripe for disposition.

## II. Analysis

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the

---

proper exercise of his rights, and to execute a plan to harass, intimidate, and retaliate against plaintiff with respect to his employment, the litigation, and the exercise of his rights."  Am. Compl. ¶ 78.

plaintiff may be entitled to relief." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).  The court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *Cal. Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  The motion will not be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### A. RICO Claims (Counts I–VI) (against all defendants)

Plaintiff has brought several RICO claims against all defendants alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq.  In these claims, Jackson contends that each of the corporate defendants—Rohm & Haas and Liberty Life—constitutes a RICO enterprise and that defendants were acting through these enterprises in a way that "constitutes conduct of an enterprise through a pattern of racketeering activity."  Am. Compl. ¶ 56.  Defendants move to dismiss the RICO claims in their entirety, arguing that plaintiff has not satisfied the basic requirements for a RICO complaint.

RICO was designed to prevent the "infiltration of legitimate business by organized

crime." *United States v. Turkette*, 452 U.S. 576, 591 (1981).  Plaintiff asserts causes of

action under § 1962(c), which directs that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  "In order to plead a violation of RICO, plaintiffs must allege (1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Lum v.

Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004); *see also Sedima, S.P.R.L. v. Imrex

Co.*, 473 U.S. 479, 496 (1985).  There must be at least two predicate acts of racketeering

to constitute a "pattern of racketeering activity."  *See* 18 U.S.C. § 1961(5).  Racketeering

activity includes any act that is "indictable" under the federal criminal statutes set forth in

18 U.S.C. § 1961(1).

Plaintiff alleges the following racketeering activity in his amended complaint:

obstruction of justice in violation of 18 U.S.C. § 1513(e) (Count I), 18 U.S.C. § 1513(f)

(Count II), 18 U.S.C. § 1512(b) (Count III), and 18 U.S.C. § 1512(g) (Count IV); mail

and wire fraud in violation of 18 U.S.C. § 1341 and § 1343 (Count V); and conspiracy in

violation of 18 U.S.C. § 1962(d) (Count VI).  Am. Compl. ¶¶ 54–81.

Defendants, in their motions to dismiss, contend that plaintiff has not pled the

essential elements of a RICO claim.  Specifically, defendants claim that plaintiff has not

adequately alleged a distinct enterprise that is "separate and apart from the pattern of

[racketeering] activity in which it engages," *Seville Indus. Mach. Corp. v. Southmost*

8

*Mach. Corp.*, 742 F.2d 786, 790 n.5 (3d Cir. 1984).  Further, defendants contend that the

alleged racketeering acts do not constitute a "pattern" of racketeering activity.

### 1. Enterprise Element

Turning first to the enterprise element, the law is clear that "a viable § 1962(c)

action requires a claim against defendant 'persons' acting through a distinct 'enterprise.'"

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3d Cir. 1995).  It is

also well established that a corporation can serve as the enterprise through which a

defendant employee conducted his or her racketeering activity.  *See Cedric Kushner*

*Promotions, Ltd. v. King*, 533 U.S. 158, 164–65 (2001).

Here, plaintiff alleges that both Rohm & Haas and Liberty Life constitute

associations-in-fact or enterprises within the meaning of RICO and that several of the

corporations' employees are persons carrying out racketeering activity through these

enterprises.  Am. Compl. ¶ 56.  Jackson additionally contends that Rohm & Haas and

Liberty Life are "persons" acting "by and through each other" in the "enterprises' affairs

through a pattern of racketeering activity."  Am. Compl. ¶ 56.  Defendants object to this,

arguing that plaintiff's use of Rohm & Haas and Liberty Life both as "enterprises" and as

"persons" runs afoul of the rule that "a claim simply against one corporation as both

'person' and 'enterprise' is not sufficient."  *Jaguar Cars*, 46 F.3d at 268.

Based on a fair reading of the complaint, plaintiff appears to assert (1) two

separate enterprises, the Rohm & Haas enterprise and the Liberty Life enterprise, and (2)

9

that Rohm & Haas and Liberty Life each acted as a "person" in the other enterprise. Plaintiff does not contend that Rohm & Haas was a "person" acting within the Rohm & Haas enterprise, or that Liberty Life was a "person" acting within the Liberty Life enterprise. Under this reading of the complaint, Jackson has not run afoul of the distinctiveness requirement and has sufficiently alleged the enterprise element of his RICO claim.

### 2. Pattern of Racketeering Activity

Defendants contend that plaintiff has failed to assert a pattern of racketeering activity. *See Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989). To survive a motion to dismiss, plaintiff must allege that the predicate acts[5] said to constitute a pattern of racketeering activity are "related"[6] and demonstrate a "threat of continuing activity." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The "threat of continuing activity"—also known as "continuity"—is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.

Defendants argue that Jackson's RICO claims must be dismissed because they do not satisfy either closed-ended or open-ended continuity. With regard to closed-ended

---

[5] Two predicate acts of racketeering activity are necessary, but may not always be sufficient, to establish a pattern of racketeering activity. *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–38 (1989).

[6] It is not contended that the relatedness prong has not been met in this case.

continuity, defendants contend that the amended complaint relies on predicate acts "that occurred in the space of less than two months, from February 16, 2006—the date [counsel for Jackson advised Rohm & Haas and Liberty Life that Jackson] was no longer disabled and wished to return to work—to April 7, 2006—when Rohm & Haas informed him that he did not have a job to which he could return."  Rohm & Haas Defs.' Mem. at 9.

 To constitute closed-ended continuity, the predicate acts must occur over a "substantial period of time."  *Id.* at 241.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. Congress was concerned in RICO with long-term criminal conduct."  *Id.*  Plaintiff contends that the predicate acts alleged in *Jackson I* and *Jackson II* can be appended to the alleged retaliation acts in *Jackson III* to meet the closed-ended continuity requirement. This is not the case.  Plaintiff cannot bootstrap claims from his prior lawsuits to satisfy the continuity requirement in the present action.  Plaintiff's amended complaint in *Jackson III* focuses on his termination from Rohm & Haas and the cessation of his disability benefits.  Plaintiff had the opportunity to amend his complaint in *Jackson II* to add claims arising out of his termination but chose not to do so.  *See* Memorandum/Order of July 7, 2006, *Jackson II*, 2006 WL 1892661, at *1.  Jackson instead decided to pursue a separate lawsuit—*Jackson III*—in lieu of amending his complaint in *Jackson II*.

 Nor can plaintiff satisfy the requirements for open-ended continuity.  Open-ended continuity occurs when past conduct threatens to repeat itself.  *See H.J., Inc.*, 492 U.S. at

242.  The Supreme Court has used the example of "a hoodlum [selling] 'insurance' to a

neighborhood's storekeepers to cover them against breakage of their windows, telling his

victims he would be reappearing each month to collect the 'premium' that would continue

their 'coverage.'"  *Id.*  As the Court explained, "though the number of related predicates

involved may be small and they may occur close together in time, the racketeering acts

themselves include a specific threat of repetition extending indefinitely into the future,

and thus supply the requisite threat of continuity."  *Id.*  Jackson is no longer affiliated

with Rohm & Haas and Liberty Life; thus, there is no threat of repetition extending into

the future.

       "Another example [of open-ended continuity] is that of an ongoing entity which

commits the predicate acts or offenses as its regular way of doing business."  *Tabas v.

Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995).  Plaintiff asserts that the fact that he has

brought four lawsuits against Rohm & Haas demonstrates that defendants' "practice is to

defend itself by engaging in racketeering activity."  Pl.'s Opp. at 10.  However, plaintiff's

aptitude for litigation does not constitute evidence that the defendants engage in

racketeering activity in their regular course of business.

       Plaintiff has provided no indication that the alleged racketeering activity in

*Jackson III* carries the threat of repetition or that it is a regular way of conducting the

business of either of the corporate defendants.  Accordingly, I find that plaintiff has not

alleged open-ended continuity.

Because plaintiff's complaint fails to allege either closed-ended or open-ended continuity, I will grant defendants' motion to dismiss plaintiff's RICO claims for failure properly to allege a pattern of racketeering activity.

### B. 42 U.S.C. § 1985 and § 1986 (Counts VII–X) (against all defendants)

Plaintiff next asserts that all of the defendants—Rohm & Haas, Liberty Life, and the individual defendants—conspired, in violation of 42 U.S.C. § 1985(2) and (3)[7]

---

[7] Plaintiff's complaint contains two counts—Counts VII and VIII—under § 1985(2), which provides, in relevant part:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, . . . or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

In Count IX, Jackson presents a claim under § 1985(3), which provides, in relevant part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

(Counts VII–IX) and § 1986[8] (Count X), to deter him from proceeding with his claims in *Jackson I* and *Jackson II* (Count VII); and to deprive him of the equal protection of the laws based on his race (African-American) and disability (depression) (Counts VIII and IX)).  He has also alleged a § 1986 claim alleging a conspiracy to violate § 1985 (Count X).

### 1. 42 U.S.C. § 1985(2)(first clause) (Count VII) (against all defendants)

Plaintiff's Count VII arises under the first clause of § 1985(2), which makes it unlawful to conspire to "deter, by force, intimidation, or threat, any party . . . in any court of the United States from attending such court, or from testifying . . . or to injure such party in his person or property on account of his having so attended or testified." Jackson contends that defendants attempted to deter him from proceeding in the *Jackson I* and *Jackson II* litigation by thwarting his return to active service and terminating his employment and benefits with Rohm & Haas.  Defendants move to dismiss the count on the ground that the doctrine of intracorporate conspiracy bars the claim.  *See* Rohm &

---

[8] 42 U.S.C. § 1986 provides, in relevant part:
Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action . . . .

Haas Defs.' Mem. at 30–32.

A successful § 1985(2)(first clause) claim requires a showing of "(1) a conspiracy between two or more persons (2) to deter [a party in a federal case] by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff[]." *Malley-Duff & Assoc. v. Crown Life Ins. Co.*, 792 F.2d 341 (3d Cir. 1986). With regard to whether plaintiff has sufficiently pled the first element—conspiracy—against the corporate defendants—I refer to this court's holding in *Jackson II*:

> Jackson's 42 U.S.C. § 1985 count is also frivolous. The thrust of the claim is that Rohm & Haas conspired with Liberty Life to deny Jackson disability benefits in order to leverage him out of the *Jackson I* litigation, in contravention of 42 U.S.C. § 1985. But Jackson's complaint does not support a finding of conspiracy between the two companies. Jackson's complaint alleges that Rohm & Haas acted "by and through" Liberty Life—i.e., in an agency relationship—to interrupt his disability benefits. Nothing in the complaint suggests that Liberty Life exceeded the scope of its agency and acted solely in its own interests when it interrupted Jackson's benefits. The intracorporate conspiracy doctrine therefore precludes existence of a conspiracy. *See Heffernan v. Hunter*, 189 F.3d 405, 411–13 (3d Cir. 1999); *School Lane House Philadelphia, LLC v. RAIT Partnership,* 2005 WL 2397146 (E.D. Pa. Sept. 27, 2005).

Opinion and order of March 9, 2006, *Jackson II*, 2006 WL 680933, at *6.

Nothing in the *Jackson III* complaint changes the conclusion I reached in *Jackson II*. Plaintiff once again asserts (1) that Rohm & Haas and Liberty Life were acting "by and through" each other, Am. Compl. ¶ 56; (2) that Rohm & Haas had "contracted with Liberty Life to provide certain insurance-related services," Am. Compl. ¶ 16; and (3) that together, Rohm & Haas and Liberty Life acted to thwart plaintiff's active return to

service.  The doctrine of intracorporate conspiracy, as I noted in *Jackson II*, directs that a corporation cannot conspire with itself, its employees, or its agents, unless the employee or agent was acting in a personal, rather than an official, capacity.  *See Heffernan,* 189 F.3d at 412.  The amended complaint does not allege that Liberty Life exceeded the scope of delegated authority.  Accordingly, the doctrine of intracorporate conspiracy requires that plaintiff's claim under § 1985(2)(first clause) against Rohm & Haas and Liberty Life must be dismissed.

With regard to the individual defendants, it is well established that employees of an entity cannot conspire with that entity unless they are acting in a personal capacity in undertaking the conspiracy.  *Robinson v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 (3d Cir. 1988).  The complaint contains no allegations that the individual defendants (who are all employees of either Rohm & Haas or Liberty Life) were acting in a personal capacity in the events constituting Jackson's termination and cessation of benefits; thus, he has failed to state a claim on which relief can be granted.[9]

---

[9] Jackson alleges that "[a]t all times relevant and material hereto, the individual defendants were each acting in his/her official capacity.  Alternatively, each acted in his/her individual capacity."  Am. Compl. ¶ 15.  However, Jackson does not allege that any of the individual defendants acted solely for his/her sole benefit or outside of the scope of his/her employment.  *Cf. Robinson*, 848 F.2d at 431.

### 2. 42 U.S.C. § 1985(2)(second clause) (Count VIII) (against all defendants)

Count VIII arises under the second clause of § 1985(2), which prohibits conspiracies to obstruct justice in the state courts with the intent to deprive a citizen of equal protection of the laws. *Kush v. Rutledge*, 460 U.S. 719, 722–25 (1983). Count VIII fails for the same reasons as Count VII: a corporation cannot conspire with its officers, directors, or agents. Count VIII fails for an additional reason, as well. In order to state a claim under the second clause of § 1985(2), the plaintiff must allege class-based, invidiously discriminatory animus. *Id.* at 722–23; *see also Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976). Here, Jackson alleges that the defendants were motivated "by invidious, class-based discrimination based upon plaintiff's race (African-American) and disability (depression)." Am. Compl. ¶ 88. However, Jackson fails to allege any facts pointing to the existence of class-based animus grounded in race or disability. Since Jackson has cited "no facts that would suggest the existence of race or class-based animus. . . these claims will be dismissed." *Messa v. Allstate Ins. Co.*, 897 F. Supp. 876, 882 (E.D. Pa. 1995).

### 3. 42 U.S.C. § 1985(3) (Count IX) (against all defendants)

Count IX arises under § 1985(3), which prohibits conspiracies to deprive a "person or class of persons of the equal protection of the laws." The doctrine of intracorporate conspiracy, as discussed above, is fatal to plaintiff's § 1985(3) claim as well. Moreover, as the Supreme Court has noted, § 1985(3), like the second clause of § 1985(2), contains

17

"language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws," *Kush*, 460 U.S. at 725, meaning "'that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* at 726 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Just as with plaintiff's Count VIII § 1985(2)(second clause) claim, the complaint contains no factual allegations to support Jackson's allegation of race discrimination or discrimination based on disability.  *Messa*, 897 F. Supp. at 882. Accordingly, the claim will be dismissed.

### 4. 42 U.S.C. § 1986 (Count X) (against all defendants)

Count X of Jackson's complaint alleges that defendants violated § 1986 because defendants "had the power to prevent or aid in the prevention of a violation of § 1985." Am. Compl. ¶ 93.  "Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also."  *Rogin v. Bensalem Twp.*, 616 F.2d 680, 969 (3d Cir. 1980); *see also* Opinion and order of March 9, 2006, *Jackson II*, 2006 WL 680933, at *6, n.10 ("The validity of Jackson's § 1986 claim depends on the validity of his § 1985 claim, and the § 1986 claim therefore falls with the § 1985 claim."). The dismissal of plaintiff's § 1985 claims is fatal to Jackson's § 1986 claim.

**C. 42 U.S.C. § 1981 (Count XI) (against Rohm & Haas only)**

Count XI of plaintiff's complaint alleges that Rohm & Haas discriminated against

plaintiff on the basis of his race (African-American) in violation of 42 U.S.C. § 1981.

Rohm & Haas moves to dismiss this claim.

Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right
in every State and Territory to make and enforce contracts, to sue, be parties, give
evidence, and to the full and equal benefit of all laws and proceedings for the
security of persons and property as is enjoyed by white citizens, and shall be
subject to like punishment, pains, penalties, taxes, licenses, and exactions of
every kind, and to no other.

42 U.S.C. § 1981(a).  Section 1981 claims are analyzed under the *McDonnell Douglas*

burden-shifting framework.  *See Pamintuan v. Nanitcoke Mem. Hosp.*, 192 F.3d 378, 385

(3d Cir. 1999).  In order to establish a prima facie case, Jackson must show that (1) he is a

member of a protected class, (2) he satisfactorily performed the duties required by his

position, (3) he suffered an adverse employment action, and (4) either similarly-situated

non-members of the protected class were treated more favorably or the adverse job action

occurred under circumstances that give rise to an inference of discrimination.  *See Sarullo*

*v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).  Once plaintiff has

established a prima facie case, the burden shifts to the defendants to articulate a

legitimate, non-discriminatory reason for the challenged action.  *Id.*

A plaintiff need not establish his prima facie case to survive a motion to dismiss.

*See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002).  Rather, a plaintiff "need

19

only give respondent fair notice of what petitioner's claims are and the grounds upon which they rest." *Id.* at 514.  However, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

Jackson has provided no indication of the facts giving rise to a claim of discrimination.  He merely states that he was terminated—possibly in violation of Rohm & Haas's policies—but there is nothing in the amended complaint to connect Jackson's termination with his claim for racial discrimination.  Jackson has not "nudged [his] claims across the line from conceivable to plausible"; accordingly, Count XI of the amended complaint "must be dismissed." *Id.* at 1974.

### D. ERISA, § 510 (Count XII) (against all defendants)

Plaintiff's complaint next asserts that all of the defendants took adverse action against Jackson because he exercised his right to receive ERISA-protected benefits in violation of § 510 of ERISA, 29 U.S.C. § 1140.  Section 510 of ERISA provides that, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a [plan] participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled to under [an employee benefit plan], this subchapter, or the Welfare and Pension Plans Disclosure Act. . . .

Section 510 claims, like other employment discrimination cases, follow the *McDonnell*

*Douglas* burden-shifting analysis. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987). "To establish a prima facie case under ERISA § 510, an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Id.*

The Rohm & Haas defendants assert that they did not act with the requisite intent to interfere with Jackson's ERISA benefits. *See* Rohm & Haas Defs.' Mem. at 38–41. This is the proper subject of a motion for summary judgment, not a motion to dismiss. It suffices that plaintiff has pled facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. Accordingly, the Rohm & Haas defendants' motion to dismiss plaintiff's § 510 claim will be denied.

With regard to the Liberty Life defendants' motion to dismiss the § 510 claim, the court recognizes that there is a lack of harmony in the caselaw concerning the ability of non-employers to be liable under § 510. *Compare Byrd v. MacPapers, Inc.*, 961 F.2d 157, 161 (11th Cir. 1992) (holding that insurer of employer's employee benefits plan was not liable on § 510 retaliatory discharge claim because "retaliatory discharge claim under § 510 of ERISA lies only against . . . [the] employer"); *with Custer v. Pan Am. Ins. Co.*, 12 F.3d 410, 421 (4th Cir. 1993) (holding that "we cannot agree with the defendants that Congress intended to limit those who could violate § 1140 to employers"), *and Plain v. AT&T Corp.*, 424 F. Supp. 2d 11, 19 & n.9 (D.D.C. 2006) (holding that "non-employer liability is permitted by Section 510").

21

In reaching its conclusion, the court in *Custer* looked to ERISA's definitions section, 29 U.S.C. § 1002, to determine that ERISA defines "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  It is thus understandable that Congress intended its use of the word "person" in § 510 would be in accordance with the Act's own definitions provision.  Moreover, while the primary concern of § 510 is to prevent retaliatory actions by employers, such as discharge, suspension, expulsion, and discipline, the statute also prohibits "discrimination," and activity which could conceivably be undertaken by a third party, such as an employee benefits plan insurer.  *See Custer*, 12 F.3d at 421.

This court agrees with *Custer* that Congress's use of the word "person" in § 510, rather than "employer," means that an employee benefits plan insurer and its employees can be liable under § 510.  Jackson has properly pled a § 510 claim against the Liberty Life defendants.  Accordingly, the Liberty Life defendants' motion to dismiss the § 510 claim will be denied.

### E. ERISA, Fiduciary and Co-Fiduciary Claims (Counts XIII and XVI) (against Rohm & Haas and Liberty Life only)

Plaintiff contends that defendants Rohm & Haas and Liberty Life breached their fiduciary duties to him in conjunction with his intended return to active service.  ERISA § 502, 29 U.S.C. § 1132, creates a civil cause of action for violations of 29 U.S.C. §

22

1104(a),[10] which requires a fiduciary to, *inter alia*, "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."  Section 1105(a) also establishes co-fiduciary liability in certain circumstances.[11]  For redress of the alleged breaches of fiduciary duty, Jackson seeks "judgment against defendants . . . jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs."  Am.

---

[10] 29 U.S.C. § 1104(a) provides, in relevant part:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

      (i) providing benefits to participants and their beneficiaries; and

      (ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

[11] 29 U.S.C. § 1105(a) provides:

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Compl. ¶ 105.  Defendants move to dismiss plaintiff's § 1104 claim on the basis that the

monetary relief plaintiff seeks is not available because the civil enforcement provision in

§ 1132 under which plaintiff proceeds only provides for equitable remedies.  Rohm &

Haas Defs.' Mem. at 49–50.

Section 1132 provides the civil enforcement mechanisms under which a plaintiff

may redress violations of ERISA.  In his amended complaint, plaintiff does not specify

under which provision he brings his § 1104 claim.  Thus, the court must first determine

under which of § 1132's civil enforcement provisions plaintiff brings his § 1104 claim

and then assess what type of relief is available under that provision.

There are five potential statutory avenues under which a plan participant may bring

suit.[12]  *See* 29 U.S.C. § 1132; *see also Kishter v. Principal Life Ins. Co.*, 186 F. Supp. 2d

438, 441–42 (S.D.N.Y. 2002) (describing civil enforcement provisions of § 1132).  First,

a participant may bring suit under § 1132(a)(1)(A) if a plan administrator does not comply

with its duties to furnish the participant with plan information as required under §

1132(c).  Second, a participant may bring suit under § 1132(a)(1)(B) to "to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of

the plan, or to clarify his rights to future benefits under the terms of the plan."  Third, a

participant may bring suit under § 1132(a)(2) to obtain "appropriate relief" on behalf of

---

[12] Section 1132 provides several other avenues for the civil enforcement of ERISA,
but they are only available to certain entities—such as the employer or the Secretary of
Labor—and not to plan participants.

the plan for breaches of fiduciary duties.  Fourth, a participant may bring suit under §

1132(a)(3) "to enjoin any act or practice which violates any provision of this subchapter

or the terms of the plan, or . . . to obtain other appropriate equitable relief (I) to redress

such violations or (ii) to enforce any provisions of this subchapter or the terms of the

plan."  Fifth and finally, a participant may bring suit under § 29 U.S.C. § 1132(a)(4) "to

obtain appropriate relief" when the plan administrator fails to provide information to the

Internal Revenue Service.

      Looking at the amended complaint, it is clear that the first, second, and fifth

avenues of enforcement are not relevant to this case: plaintiff is not alleging that

defendants violated their statutory duties to provide plan information as defined by §

1132(c); plaintiff's own memoranda in opposition to defendants' motions to dismiss

indicate that he is not bringing a claim concerning his benefits under the plan; *see* Pl.'s

Opp. at 63 ("[The suit] has been brought to address defendants' misconduct in failing to

carry out their duties, and not because there was a dispute over a denial of benefits."); and

plaintiff is not alleging that the plan administrator failed to report information to the IRS.

While the third avenue, § 1132(a)(2), concerns fiduciary duties, it only allows a

participant to seek recovery on behalf of the benefits plan and does not provide for an

individual participant to bring suit to recover for personal losses.  *See Mass. Mut. Life Ins.*

*Co. v. Russell*, 473 U.S. 134, 140 (1985) (holding that § 1132(a)(2) "inures to the benefit

of the plan as a whole" and does not provide an individual plaintiff a means of recovery).

Plaintiff's claim is clearly one for individual relief rather than a suit on behalf of the benefits plan. Thus, the fourth avenue, § 1132(a)(3), must govern Jackson's individual claim for breach of fiduciary duty.

Section § 1132(a)(3) functions as ERISA's "catch-all" remedial section, which authorizes "appropriate equitable relief" to redress ERISA violations. *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Courts routinely confirm its applicability to an individual participant's breach of fiduciary duty claims. *See, e.g.*, *id.* at 515; *Bixler v. Cent. Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1298–1300 & n.17 (3d Cir. 1993).

Understanding that Jackson must be proceeding on his § 1104 claim under § 1132(a)(3), it is incumbent on the court to determine whether the relief plaintiff seeks—judgment in an amount in excess of $150,000—is available under § 1132(a)(3). As § 1132(a)(3) has been interpreted by the Supreme Court in recent cases, it does not authorize the type of relief that plaintiff seeks.

In *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), the Supreme Court read § 1132(a)(3)'s language of "appropriate equitable relief" to preclude an award of "compensatory damages—monetary relief for all losses [the] plan sustained as a result of the alleged breach of fiduciary duties." *Id.* at 255 (emphasis omitted). In so holding, the Court determined that § 1132(a)(3)'s use of "appropriate equitable relief" refers to "those categories of relief that were *typically* available in equity." *Id.* at 257 (emphasis in

26

original).  Almost ten years later, the Court reaffirmed its reading of § 1132(a)(3) in

*Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 183 (2002), holding that

a plaintiff who had been denied benefits as the result of a breach of fiduciary duty could

not bring a claim under § 1132(a)(3) for monetary damages.  *Id.* at 221.  In the aftermath

of these cases, courts have consistently held that monetary damages are not available

under § 1132(a)(3).  *See Kishter*, 186 F. Supp. 2d at 446 (reading *Mertens* and *Great-

West* as precluding plaintiff's recovery of $270,000 in damages because "an

individualized recovery" of money lost to plaintiff as a result of defendant's fiduciary

breach is not "'appropriate equitable relief'" under § 1132(a)(3)); *see also Kollman v.

Hewitt Assoc.*, No. 03-2944, 2005 WL 1941658, at * 10 (E.D. Pa. Aug. 11, 2005)

(collecting cases).  *But see De Pace v. Matsushita Elec. Corp.*, 257 F. Supp. 2d 543, 564

(E.D.N.Y. 2003) (striking plaintiffs' claim for compensatory damages but allowing them

to seek front pay).[13]

In the present case, where plaintiff "demands judgment against defendants . . .

jointly and/or severally, in the amount in excess of $150,000, exclusive of interest and

---

[13] It is important to note that even *De Pace* held that compensatory damages are
unavailable under § 1132(a)(3).  *De Pace* stands as a notable exception because it allowed
plaintiff to proceed under § 1132(a)(3) on a claim for front pay when "every district
court . . . addressing the issue post-*Great-West*[] has prohibited claims of front pay in
ERISA cases." *Kollman*, 2005 WL 1941658, at *10.  Jackson does not argue that his
claim for damages should be construed as one for equitable remedies such as restitution
or front pay; thus, the court need not address the question of whether, under *Mertens* and
*Great-West*, a court is ever entitled to award money damages as an equitable remedy
under § 1132(a)(3).

costs," Am. Compl. ¶ 105, he is clearly seeking monetary relief which is unavailable under the statute.  Accordingly, because he is not entitled to the relief that he seeks, Jackson has failed to state a claim on which relief can be granted.

Because Jackson's § 1104 claim fails, his derivative § 1105 claim against Rohm & Haas and Liberty Life must be dismissed as well.  *See Thomas v. Aris Corp.*, 219 F.R.D. 338, 339 n.1 (M.D. Pa. 2003) ("[Section 1105] merely provides for a derivative cause of action which is ultimately based upon a violation of a duty imposed by 29 U.S.C. § 1104.").[14]

### F. Fraud (Count XV) (against all defendants)

In Count XV, Jackson presents a state-law claim of fraud against all defendants. Defendants move to dismiss this claim on the ground that Jackson has not adequately pled the elements of fraud.

To state a claim for fraud under Pennsylvania law, Jackson must plead "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 647

---

[14] Because we are dismissing plaintiff's § 1104 and § 1105 claims for failure to state a claim, we have no occasion to consider whether Jackson's failure to exhaust his administrative remedies would be fatal to these claims.

A.2d 882, 889 (Pa. 1994).  Federal Rule of Civil Procedure 9(b) requires that the elements

of fraud be stated with particularity "in order to place defendants on notice of the precise

misconduct with which they are charged, and to safeguard defendants against spurious

charges of immoral and fraudulent behavior."  *Seville Indus. Mach. Corp. v. Southmost*

*Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

Accepting plaintiff's allegations as true, he has sufficiently pled a claim of fraud.

Jackson alleges that defendants, "intentionally and/or knowingly, and/or in reckless

disregard for the truth," made misrepresentations that were material.  Am. Compl. ¶ 109.

He further alleges that the misrepresentations were made "with the intent to defraud," and

that he did "reasonably rely upon" them.  Am. Compl. ¶¶ 109, 77–78.  The complaint

describes the alleged fraud with sufficient particularity to put defendants on notice of the

alleged misconduct.  *See* Am. Compl. ¶¶ 77–78.  Finally, plaintiff contends that he was

injured as a result of the alleged fraud; namely, he was terminated from his employment

and his disability benefits were suspended.  Am. Compl. 52–53.  Any questions about

whether defendants *in fact* made material misrepresentations and whether plaintiff *in fact*

relied upon them will not be resolved at this stage in the litigation.  When evaluating a

motion to dismiss, the court is not concerned with whether the plaintiff will "ultimately

prevail" on the claim, but whether he should be "entitled to offer evidence to support" the

claim.  *Scheuer*, 416 U.S. at 236.  Jackson has sufficiently pled a claim for fraud, and I

will deny defendants' motions to dismiss Count XV.

29

**G. Negligent Misrepresentation (Count XVI) (against all defendants)**

In Count XVI, plaintiff presents a state-law claim of negligent misrepresentation,

which defendants move to dismiss on the same ground as the fraud claim, *supra* Part II.F.

Unlike plaintiff's claim for fraud, the heightened pleading requirements of Rule

9(b) do not apply to negligent misrepresentation claims.  *See TruePosition, Inc. v. Sunon,*

*Inc.*, No. 05-3023, 2006 WL 1451496 (E.D. Pa. May 25, 2006).  Under Pennsylvania law,

> [t]he elements which must be proven for such a wrong to be shown are: (1) a
> misrepresentation of a material fact; (2) the representor must either know of the
> misrepresentation, must make the misrepresentation without knowledge as to
> its truth or falsity or must make the representation under circumstances in which he
> ought to have known of its falsity; (3) the representor must intend the
> representation to induce another to act on it; and (4) injury must result to the
> party acting in justifiable reliance on the misrepresentation.

*Gibbs*, 647 A.2d at 890.  Plaintiff has sufficiently pled these elements, alleging that

"[d]efendants, intending to induce plaintiff to act, misrepresented material facts, either

knowing of the misrepresentations or without knowledge as to their truth or falsity, upon

which plaintiff justifiably relied, and which resulted in injury to plaintiff."  Am.

Compl. ¶ 111.  Accordingly, defendants' motions to dismiss Count XVI will be denied.


**H. Intentional Infliction of Emotional Distress (Count XVII) (against all defendants)**

Count XVII alleges a cause of action for intentional infliction of emotional distress

against all defendants.  As a Pennsylvania court has recently stated:

> There remains some question as to whether the courts of this Commonwealth
> recognize a cause of action for intentional infliction of emotional distress.
> However, our Supreme Court has indicated that in order for a plaintiff to prevail
> on such a claim, he or she must, at the least, demonstrate intentional outrageous or
> extreme conduct by the defendant, which causes severe emotional distress to the
> plaintiff. In addition, a plaintiff must suffer some type of resulting physical harm
> due to the defendant's outrageous conduct.

*Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004) (citations omitted).  The *Jackson III* amended complaint alleges no physical harm, rendering dismissal appropriate under *Reeves*.  To combat dismissal, plaintiff alleges that he has been on "disability for a period of years due to severe depression."  Pl.'s Opp. at 67.  However, plaintiff's amended complaint asserts that he was medically cleared to return to work before the events underlying his intentional infliction of emotional distress claim occurred, and alleges no physical harm caused by defendants' actions.  Accordingly, Jackson's intentional infliction of emotional distress claim will be dismissed.

### I. Civil Conspiracy (Count XVIII) (against all defendants)

Finally, plaintiff's complaint contains an allegation of civil conspiracy against all of the defendants.  This claim fails under the doctrine of intracorporate conspiracy, as discussed in Part II.B, *supra*.

### III. Conclusion

AND NOW, this 5th day of September, 2007, for the foregoing reasons, defendants' motions to dismiss will be GRANTED in part and DENIED in part.  Plaintiff may pursue

his ERISA § 510 (Count XII), fraud (Count XV), and negligent misrepresentation (Count XVI) claims against all defendants.  All other counts against all defendants are DISMISSED.

In consideration of expedition and economy for the parties and the court, it is FURTHER ORDERED that the case is assigned to the Honorable M. Faith Angell, Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a) and Loc. R. Civ. P. 72.1 I(e) for pretrial management purposes, including but not limited to: utilization of Fed. R. Civ. P. 16 management procedures; resolution of all discovery disputes and requests for sanctions; issuance of pretrial management orders; amendments to pleadings and joinder of parties; conduct of settlement conferences as necessary; and seeking the consent of the parties for final resolution of the case by final judgment by the Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Local Rule 72.1 III(b).  The parties are expected to hold the discovery planning conference required by Rule 26(f) and complete their Rule 26(a)(1) self-executing initial disclosure required by Rule 16(a)(1) promptly and in advance of the Rule 16(b) scheduling and planning conference with the court, unless the case is exempt from such disclosure by Rule 26(a)(1)(E).

BY THE COURT:


    /s/ Louis H. Pollak
    Pollak, J.

32